UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA M. BROWN,

    Plaintiff,

v.                                                       Case No. 11-15508

VHS OF MICHIGAN, INC.,

    Defendant.
                                               /

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Georgia Brown sues her former employer, Defendant VHS of Michigan, Inc., under the Equal Pay Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and state law. Defendant moves for summary judgment. The matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2). Plaintiff waives most of her claims, and no persuasive evidence supports the claims she defends. Accordingly, the motion will be granted.

**I. BACKGROUND**

A hospital operated by Defendant hired Plaintiff in October, 2008, to supervise nurses, supervise social workers, and direct case management (the briefs contain no detailed explanation of the job—or of many technical terms). (Dkt. # 17 at 11.) A few months after beginning the job, Plaintiff's responsibilities increased and, in consequence, Plaintiff received a pay grade raise. (Brown Dep. 42-45, Dkt. # 17, Ex. 1; *id.* Ex. 7.)

About a year later, Plaintiff began persistently to seek more pay. In a January, 2010, email, she complained that two specialist nurses, her subordinates, as well as other administrators earned more money than she. (Dkt. # 24, Exs. B-C.) She never suggested that discrimination possibly caused a pay disparity; she merely asserted in this and later emails an entitlement to earn more than people she supervised and administrators who, she claimed, had fewer duties. (*Id.*) No raise was awarded.

By July, 2010, Plaintiff's job performance had deteriorated. The hospital's vice president of finance, Tina Wood, says Plaintiff failed to ensure proper patient "access management." (Wood Dep. 34-35, Dkt. # 17, Ex. 9.) The hospital moved several "access management specialists" from Plaintiff to another supervisor. (Brown Dep. 87-88.) Defendant says also that the number of unpaid patients' bills among Plaintiff's case managers had nearly tripled. (Dkt. # 17 at 7.) On September 16, 2010, Wood wrote Plaintiff: "Process is your responsibility to fix, educate and monitor for effectiveness. Continuation of write offs is not an option." (Dkt. # 17, Ex. 11.) "[I]t was obvious," Wood says, that Brown's department "didn't know what [it] was doing." (Wood Dep. 110-11.) As these problems continued, Plaintiff asked a supervisor, Dr. Patricia Uddyback, for a raise. (Brown Dep. 55.) But Uddyback says that she "had been getting a lot of complaints" about Brown's being "very rude and mean" to subordinates and that she had spent a great deal of time doing Brown's tasks. (Uddyback Dep. 114, 117, Dkt. # 17, Ex. 13.) She awarded no raise and, in October, 2010, she placed Plaintiff on probation—a thirty-day "performance improvement plan"—because of "unacceptable performance." (Dkt. # 17, Ex. 12.) Plaintiff failed to improve her performance and suffered termination.

## II. STANDARD

Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION

The complaint asserts eight counts: for Title VII race and sex discrimination, ADEA age discrimination, Title VII retaliation, harassment and a hostile work environment (under no specific law), Equal Pay Act discrimination, intentional infliction of emotional distress, and defamation. Defendant moves for summary judgment on each claim. In her response, however, Plaintiff declines to address her counts for "defamation, intentional infliction of emotional distress, and discrimination under the ADEA, as all remedies provided for under these counts are also made available under the Title VII and Equal Pay Act claims[.]" (Dkt. # 24 at 5.) Obviously, even if two claims provide the same remedy, a plaintiff asserting both needs to establish the legal elements of each. Plaintiff abandons the claims she lists. Also, Plaintiff never discusses her claims for race, sex, and Equal Pay Act discrimination and for harassment and a hostile work environment; she abandons these claims, too. She defends only the claim for Title VII retaliation, and she belatedly raises a claim for retaliation under the Equal Pay Act.

Under the Equal Pay Act, an employer may not pay employees of a different sex different amounts for comparable work, *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th

Cir, 2006), and under Title VII, an employer may not provide employees of a different race or sex different "terms of conditions of employment." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012).  Both the Equal Pay Act and Title VII prohibit retaliation against an employee for complaining about prohibited discrimination. 29 U.S.C. § 215(a)(3); 42 U.S.C. § 2000e-3(a).  As evidence of her protected conduct, Plaintiff cites only the emails in which she asked for a raise.  (Dkt. # 24 at 8-9, 14-15.) These emails cannot support a claim for retaliation because they neither complain nor approach complaining about a practice in violation of the Equal Pay Act or Title VII.

Plaintiff, who worked as an administrator, complained about the pay of her subordinates, specialist nurses, who worked assisting physicians and patients.  Plaintiff never attempts to show that her work even remotely resembled the nurses' work.  The record compels the conclusion that no resemblance existed and that no reasonable employer could construe Plaintiff's emails as connected to the Equal Pay Act.  *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1334-35 (2011) (holding that a plaintiff asserting a claim under 29 U.S.C. § 215(a)(3) for retaliation must show that the employer received "fair notice" that the plaintiff asserted rights protected by the Equal Pay Act or the Fair Labor Standards Act).

Plaintiff says that because she, a black female, stated that she earned less than two white male subordinates, her emails resembled a complaint about Title VII discrimination, even though the emails never mention race or sex and never raise or object to potential discrimination.  She provides no good reason for finding the pay disparity abnormal.  Neither her emails at the time nor her papers in this action attempt to compare the difficulty of obtaining her and her subordinates' positions; the market

4

demand for her and her subordinates' work; the skills, experience, or hours that her and her subordinates' jobs required; the experience or longevity that she and her subordinates possessed; or the level of performance that she and her subordinates displayed. She merely says, without a word of support or explanation, that she had more responsibility and more work. She says also that she earned less than two white female administrators, but again she merely asserts, without explanation, that the two women earned more for doing less.

Plaintiff says that "it is [] reasonable for an individual to believe" that she will earn more than her subordinates. (Dkt. # 24 at 9.) But if the individual is not aware of how her job compares, the court believes it is not. Defendant's director of compensation says, for example, that an anesthetist tends to "make quite a bit more than the director of the operating room" and that many physicians make more than executives. (Griswold Dep. 36, Dkt. # 17, Ex. 4.) He says of the specific nurses Plaintiff named, "Those folks are the talent. The[y] are the folks that patients come to [this hospital] for. . . . [They] are hard to attract, recruit, and retain." (*Id.* 35, 47.) Plaintiff never explains or evidences the comparative importance of her work.

To suffer Title VII retaliation, an employee must send her employer more than a vague and unsupported charge of discrimination. *See Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591-92 (6th Cir. 2007). In her emails, Plaintiff neither explicitly nor implicitly alleged discrimination. Plaintiff fails to show that the emails raised a minimally plausible issue of any kind.

Even if Plaintiff showed that the Equal Pay Act or Title VII protected her conduct, she fails to show that Defendant provides insincere reasons for terminating her, *see*

5

*Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009), or that Dr. Uddyback, a black female and the person who initiated the termination, acted because of discriminatory animus.

The retaliation claims fail.[1]

## IV.  CONCLUSION

IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 17] is GRANTED.

      s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

---

[1] A paper Plaintiff signed on the day of her hiring states: "I agree that I shall not commence any action or other legal proceeding relating to my employment or the termination thereof more than six months after the event complained of and I voluntarily waive any statute of limitations to the contrary." (Dkt. # 17, Ex. 3.)  Plaintiff was terminated on November 19, 2010; she submitted a discrimination charge to the EEOC on January 18, 2011, (*id.*, Ex. 16); and, nearly a year later, on December 16, 2011, she began this action.  Defendant contends that the contractual period of limitation bars each claim not preserved by Plaintiff's EEOC charge.  *Thurman v. DaimlerChysler, Inc.*, 397 F.3d 352, 357-59 (6th Cir. 2004).

Because the EEOC retains exclusive jurisdiction of the subject matter of a charge for 180 days, the submission of an EEOC charge should count, for the purpose of a contractual six-month limitation, as the commencement of an action.  *See Fritz v. FinancialEdge Community Credit Union*, 835 F.Supp.2d 377 (E.D. Mich. 2011). Accordingly, Defendant concedes that the contractual period of limitation bars none of the claims Plaintiff raised in her EEOC charge and that some of this action is therefore timely.  The employment paper, however, bars not a late "claim or cause of action" but rather a late "action or legal proceeding."  "Commence any action or other legal proceeding" appears to mean "commence any lawsuit, regardless of forum" rather than "raise any claim or cause of action."  *See Black's Law Dictionary* 28 (6th ed. 1990) (defining "action" as "a lawsuit brought in court[.]")  But how can a bar on a late "lawsuit" bar some of a lawsuit's claims?  A bar on a late lawsuit bars lawsuits, and this lawsuit is, in a sense, both "late" and "not late."

Because each potentially barred claim—the state law claims and the retaliation claims—fails on other grounds, no ruling on this issue is needed and, for now, no more is said.

Dated: January 9, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 9, 2013, by electronic and/or ordinary mail.

        s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522